836 F.2d 549
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pauline BROWN, Appellant,
v.
Otis R. BOWEN, Secretary of Health & Human Services, Appellee.
 No. 86-6015.
 United States Court of Appeals, Sixth Circuit.
 Dec. 30, 1987.
 
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Pauline Brown appeals from the district court's judgment affirming the Secretary's determination that Brown is not disabled and therefore not entitled to a period of disability and social security disability benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On July 14, 1982, Brown applied for a period of disability and disability insurance benefits claiming an inability to work from July 12, 1980, due to a disc injury and resulting lower back and leg pain.[1] Her application was denied initially and upon reconsideration. Brown then requested an administrative hearing which was held on April 19, 1983. Brown was forty-three years old at the time of the hearing.
 
 
 3
 At the hearing, the following evidence was introduced. Brown testified that she was born on August 1, 1939, has a ninth grade education, and has worked as a sales clerk and as a restaurant employee. She last worked in October, 1978, at a clothing store. She injured her back in May of 1978, and has undergone three operations. On November 2, 1978, Brown underwent a diskectomy of the L4-5 and L5-Sl on the right side of her back. On April 2, 1980, a defect in the L4-5 area of her back was removed, and, on January 19, 1983, scar tissue which had developed around the nerves in her back was removed and steel rods were implanted in her back. Brown testified that immediately following each operation she would feel much better but then after approximately two months her condition would again decline. She can sit for no longer than thirty to forty minutes before her right leg becomes numb and her toes and back ache. She can stand for no more than thirty minutes before she usually has to lie down. Riding in a car causes her back and legs such pain that, two months before the hearing, her husband purchased a van, equipped with a bed, to transport her to her doctors for treatment. She does, however, occasionally drive one and one-half miles to the post office. She must wear a back brace, and she stated she cannot twist without severe pain. She added that, since her last operation, her doctors advised her to walk three or four miles per day but she must push herself to complete one mile and must then lie down to rest.
 
 
 4
 Brown further testified, at the hearing, that she has trouble dressing herself and must have relatives clean her home because she can neither bend nor lift. In her disability report, dated July 14, 1982, Brown answered that she is able to cook and do light housekeeping such as making beds, vacuuming, and washing dishes, but that relatives must do the rest. She can no longer garden, maintain the lawn, quilt, or attend church as she cannot sit through the services.
 
 
 5
 Brown has taken two Darvocet N-one-hundred tablets each day for the past three or four years, and has taken Elavil each night since March 29, 1983, for sleeping. She additionally takes Tylenol-Three and Emperin-Three for pain and Feldene for occasional arthritis.
 
 
 6
 The following medical evidence was introduced at the hearing.[2]
 
 
 7
 In a July 7, 1982 insurance report, Dr. Milo H. Schosser, one of Brown's treating general practitioners, stated Brown's subjective symptoms as recurrent pain from her lower back to her legs with exertion. His objective findings were minimal with absent achilles reflexes and a note that Brown was ambulatory. He diagnosed Brown as having herniated disc disease-lumbar and post disc surgical pain of the lower back. He concluded that Brown was, at the time of the report, totally disabled for any occupation and would remain so in the future. In a letter dated, December 10, 1982, Schosser indicated that Brown has had increasing pain in her low back radiating down both legs along her sciatic nerves. He noted that she had been hospitalized from November 29, 1982, through December 3, 1982, for an apparent recurrance of her herniated disc problem and is scheduled for surgery in January of 1983. He concluded that "she continues to be totally disabled and will be in the foreseeable future."
 
 
 8
 Dr. Charles C. Rutledge conducted an orthopedic examination on Brown on August 5, 1982. He reported that Brown stands erect and that her neck, upper extremities, hips, knees, and ankles enjoyed a full range of motion. He stated that her lateral and posterior bending were within normal limits and that she could raise her leg ninety degrees while lying flat on a table. He added that her knees flexed, her thighs could be brought nearly to the abdomen bilaterally. He noted hyposthesia of the left lower extremity compared to the right. Disc space, he stated, was within normal limits, and he noted a normal lumbar vertibrae. He summarized Brown's condition as post-op herniated disc with some indication of L-5 pressure, no motor change but slight reflex changes.
 
 
 9
 On November 29, 1982, Dr. Russell L. Travis, a Board Certified Neurosurgeon, examined Brown. After reviewing her medical history, Travis noted that brown appeared to be in no acute distress, but remarked that her sensory perceptions were diminished in the Sl and tender in the L4-5 areas of her back. Lastly, he recommended that Brown be admitted for a repeat CT scan and myleogram.
 
 
 10
 In a discharge summary, dated January 26, 1983, Travis indicated that Brown had been admitted to Good Samaritan Hospital in Lexington, Kentucky on January 19, 1983, because a December, 1982 myleogram revealed either a questionable recurrent disc problem or scar tissue. He stated that he and Dr. Brooks Morgan operated on the L4-5 area of Brown's back to remove scar tissue, free the nerve root in her back, and place knodt rods in her back. He added that Brown did extremely well post-operatively, that she was ambulatory in a brace, and that her wound was healing well. An update from Travis, on February 7, 1983 indicated that although Brown complained of some leg pain, she ambulated without problem and that her wound was healing well. An update from Dr. James R. Bean, on March 21, 1983, some eight weeks following her third operation, revealed that Brown still complained of pain in the antero-medial aspect of her right lower leg. He added that this area of her leg is tender to the touch with a burning type of pain. Her back pain however was minor and improving as she was wearing a back brace and ambulating. He concluded that Brown's recovery was relatively uncomplicated.
 
 
 11
 In a letter to Travis, dated March 2, 1983, Morgan wrote that he examined Brown on that date and that he would consider her recovery a success. He opined that Brown's leg pain was much reduced although she had declined to comment herself because of a pending workers' compensation claim. He added that she was getting along much better than before the operation.
 
 
 12
 In a report, dated May 13, 1983, Rutledge stated that he had conducted an orthopedic examination of Brown on that day. He reported that she complained of back and leg pain and then reviewed her medical history. His physical examination of Brown revealed that Brown's neck enjoyed a full range of motion and that her lateral and posterior bending were within normal limits. He added that back forward bending brought her fingers three inches below her knees. While lying on a table, Brown could raise her straight legs eighty-five degrees but that doing so with her right leg cause her pain in her back. Her hips, knees, and ankles enjoyed a full range of motion. He found hypesthesia of the left lower extremity most marked on the lateral leg and medial foot. He also found her heel walking equal on both feet but that her toe walking was weaker on the left. X-ray evidence indicated to Rutledge excess callus formation in the L4 and L5 region on the right side of her back. He found that Brown had no motor change but had some decreased sensation on her left lateral leg and medial foot. Her reflexes, bilaterally, were absent. He additionally noted that although Brown, at the time of his examination was limited possibly up to fifty-percent in various areas, such as her ability to sit, lift, carry, stand, walk, handle objects, bend, push, or pull, such would probably improve over the next several months. Rutledge attached his medical assessment of Brown's ability to do work-related activities to his examination report on Brown. In his assessment, he indicated that Brown was not limited in her ability to sit or handle objects. He found her ability to stand slightly limited and her ability to bend, push or pull limited to fifty-percent. He limited her ability to lift or carry to roughly thirty pounds.
 
 
 13
 On the basis of this evidence, the ALJ determined, on July 26, 1983, that Brown was not disabled, and, therefore, not entitled to benefits. He added that Brown's subjective complaints of pain were not supported by objective findings in the medical evidence, and that Brown had the residual functional capacity to perform a full range of sedentary work.
 
 
 14
 Brown appealed the ALJ's decision to the Appeals Council. The Appeals Council, on October 21, 1983, declined to review the ALJ's decision. Brown then timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). Each party filed motions for summary judgment. Upon considering the evidence, the district court granted the Secretary's motion for summary judgment and thereby affirmed the decision of the ALJ. This timely appeal followed.
 
 
 15
 The only issue on appeal is whether the Secretary's findings that Brown is not disabled and is not suffering from disabling pain are supported by substantial evidence.
 
 II.
 
 16
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(a) which also specifies that the Secretary's factual findings in a social security case are conclusive if supported by substantial evidence. "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), cert. denied, 461 U.S. 957 (1983)). In determining this question, we examine the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980).
 
 
 17
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir.1982); Beavers v. Secretary of Health & Human Servs., 577 F.2d 383, 387 (6th Cir.1978). Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 18
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A).[3] If the claimant is working, benefits are automatically denied. If a claimant has certain listed impairments, benefits are owing without further inquiry. 20 C.F.R. Sec. 404.1525(a). Neither of these factors is applicable in this case. If the individual is not working and does not have one of the listed impairments but has previously worked, as in this case, the Secretary must next determine whether the claimant can return to the job she previously held. By showing "a medical basis for an impairment that prevents him from engaging in [her] particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the present case, the Secretary found that the claimant was not capable of returning to her past relevant employment.
 
 
 19
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983).
 
 
 20
 The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." Sec. 20 C.F.R. pt. 404, subpt. P, app. 2. If the characteristics of the claimant do not identically match the description in the grid, however, the grid is used only as a guide to the determination. Kirk, 667 F.2d at 528. In the instant case, the Secretary found that the characteristics of the claimant did not identically match the grid. Specifically, the Secretary found that Brown retained the residual functional capacity to perform a full range of sedentary work and that Brown was a younger individual with a limited education. The Secretary then applied Rules 201.24 and 201.25, 20 C.F.R. pt. 404, subpt. P, app. 2, which directed the conclusion that Brown was not disabled, and, therefore, not entitled to benefits.
 
 
 21
 On appeal, Brown argues that the Secretary's determination that her subjective complaints of disabling pain were not credible is not supported by substantial evidence.
 
 
 22
 This court has previously held that subjective complaints of pain may support a claim for disability. Glass v. Secretary of Health, Educ. & Welfare, 517 F.2d 224, 225 (6th Cir.1975) (per curiam). Credibility determinations related to subjective complaints of pain rest with the ALJ, and the ALJ's opportunity to observe the demeanor of the claimant "is invaluable and should not be discarded lightly." Kirk, 667 F.2d at 538 (quoting Beavers, 557 F.2d at 387). In view of these principles, claims of disability due to pain have been decided on a case by case basis. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986).
 
 
 23
 However, when Congress enacted the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794, it established a new statutory standard for evaluating subjective complaints of disabling pain. The analysis under this new standard is essentially two-pronged:
 
 
 24
 [F]irst, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain.
 
 
 25
 Duncan, 801 F.2d at 853. See also, S.Rep. No. 466, 98th Cong., 2d Sess. 24, reprinted in 130 Cong.Rec. S6221, (dailey ed. May 22, 1984); Landry v. Heckler, 782 F.2d 1551, 1553-54 (11th Cir.1986) (per curiam).
 
 
 26
 In his findings, the ALJ determined that the medical evidence indicated that Brown had severe residuals of a herniated disc with multiple operations. This finding is supported by substantial medical evidence. Accordingly, Brown meets the first prong of the Duncan standard--there is objective medical evidence of an underlying medical condition.
 
 
 27
 The ALJ also found that Brown's subjective complaints of disabling pain were not supported by objective evidence. This is tantamount to finding that Brown has failed to satisfy the second prong of the Duncan standard. We find that substantial evidence in the record supports this finding because neither of the alternative tests of the second prong are satisfied.
 
 
 28
 First, there is substantial evidence to support a finding that there is not objective medical evidence which confirms the severity of the alleged pain. Although Brown's treating physicians as well as several other physicians noted that Brown claimed to be having pain in her back and legs, none diagnosed the pain as severe and disabling. In fact, Travis, who examined Brown on November 29, 1982, noted that she appeared to be in no acute distress. Following Brown's third operation, Travis remarked that, although Brown complained of pain, she ambulated well in a brace and was doing extremely well post-operatively. Bean remarked as well that upon his examination on March 21, 1983, Brown complained of a burning-type pain in her back, the pain appeared minor and was improving as Brown wore a back brace and ambulated well. Morgan expressed his opinion, following his exam of Brown on March 2, 1983, that Brown's pain was much reduced although, because of pending litigation, Brown declined to elaborate on this herself. Further, at the hearing, Brown testified that her doctors advised her to walk three to four miles per day but that she could manage to walk only one mile. She also testified that she could do a limited amount of driving but that she can no longer clean her home. In her diability report, dated July 14, 1982, Brown answered that while she cooks and does light housekeeping such as making beds, vacuuming, and washing dishes, relatives must do the rest. Brown answered on that same report that she was capable of driving short distances of up to fifty miles.
 
 
 29
 Second, substantial evidence supports the Secretary's findings that Brown's objectively determined medical conditions are not so severe that they could reasonably be expected to produce disabling pain. Most recently, Rutledge, who examined Brown on May 13, 1983, found decreased sensation on Brown's left lateral leg and medial foot but found no motor change to any degree. Rutledge's range of motion studies revealed no severe impairment. Straight leg raising was to eighty-five degrees and the range of motion of Brown's hips, knees, and ankles were normal as were her lateral and posterior bending. Finally, in his assessment of Brown's ability to perform work-related activities, Rutledge found no limitation in Brown's ability to sit or handle objects and only a slight limitation in her ability to stand and bend. He further found her ability to push or pull limited by fifty-percent and lifting and carrying ability limited to thirty pounds. Brown's additional medical updates indicate that following her third operation, she ambulated well, that her pain was improving and that her recovery was uncomplicated. Accordingly, the medical evidence does not indicate that Brown's diagnosed infirmities are so severe that they could reasonably be expected to produce disabling pain.
 
 
 30
 Since the medical evidence supports a finding that Brown does not meet either of the alternative tests of the second prong of the Duncan standard, we conclude there is substantial evidence to support the finding that Brown does not suffer from disabling pain.
 
 
 31
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Brown previously filed an application for a period of disability and for disability insurance benefits on August 15, 1979, in which she alleged an onset date of disability on October 28, 1978. The application was denied through the hearing level by a decision dated September 15, 1980. She did not pursue the claim further
 
 
 [2]
 In his opinion, the ALJ stated that he considered medical evidence from the date of the previous ALJ hearing in July of 1980 to the present. He indicated that medical evidence in the record prior to such period was adequately summarized and previously considered by an ALJ and did not establish a disability on Brown's part
 
 
 [3]
 Section 423(d)(1)(A) provides:
 Inability to engage in any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.